UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
CALYON,  :  OPINION AND ORDER
          Plaintiff,  :  07 Civ. 2241(RO)
           :
     v.  :
           :
MIZUHO SECURITIES USA, INC.,  :
MIZUHO INTERNATIONAL PLC,  :
ALEXANDER REKEDA, DOUGLAS  :
MUNSON, JAMES SHEPARD, WILLIAM  :
BUDD, JR., CLIFFORD CONDON, XAVIER  :
CAPDEPON, PAOLO TORTI, GWEN  :
SNORTELAND, DANIEL WILL, RACHEL  :
YANG, and YURI CHUMAK,  :
          Defendants.  :
---------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/17/07

Appearances:

Michael Starr and David Dunn, Hogan & Hartson LLP, New York, NY, for plaintiff.

Steven G. Kobre and Michael S. Kim, Kobre & Kim LLP, New York, NY, for defendants Alexander Rekeda, Douglas Munson, James Shepard, William Budd, Jr., and Paolo Torti.

OWEN, District Judge:

      Plaintiff Calyon, a banking corporation, has brought suit against Mizuho, another bank, and eleven individuals who formerly worked in brokerage at Calyon but collectively left and now work at Mizuho. Calyon alleges, *inter alia*, a breach of fiduciary duties, unfair competition, and a violation of the Computer Fraud and Abuse Act. Five of the individual defendants,[1] claiming improper use of information and confidences that they disclosed to a brother-in-departure who they assert was one of their "attorneys" but later withdrew from the group, have now moved this Court to (1) enjoin Calyon's counsel, Hogan & Hartson, and certain Calyon in-house counsel from

---

[1] The five moving defendants are Alexander Rekeda, Douglas Munson, James Shepard, William Budd, and Paolo Torti.

representing Calyon; (2) enjoin Calyon and its attorneys from communicating with the said returning employee concerning his communications with the movants; and (3) enjoin Calyon and its attorneys from using in this litigation any information that returnee obtained from the movants.

A party asserting attorney-client privilege has the burden of establishing all of its elements. *In re Grand Jury Proceedings*, 219 F.3d 175 (2d Cir. 2000). Privilege attaches (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived...." *United States v. Bein*, 728 F.2d 107 (2d Cir. 1984).[2] The privilege hinges upon the client's reasonable belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice. *Diversified Group, Inc. v. Daugerdas*, 139 F.2d 445 (S.D.N.Y. 2001).

By way of background, on December 8, 2006, a number of Calyon employees, all from the Collateralized Debt Obligation ("CDO") group, resigned their employment after executing employment agreements with competitor bank Mizuho. Mizuho launched its own CDO group with these new hires. A few days later one member of this group, Benjamin Lee, returned to Calyon's employment, whereupon five of the rest asserted that Lee has a legal background and acted as their attorney, contending that he had a duty to

---

[2] A party's unilateral belief that he is represented by counsel does not make him a client unless there is a reasonable basis for the belief, *Knigge ex rel. Corvese v. Corvese*, 2001 WL 830669 at *3 (S.D.N.Y. July 23, 2001), and a communication is not privileged simply because it is made by or to a person who happens to be a lawyer. *General Foods Corp. v. Jay V. Zimmerman Co., Inc.*, 1988 WL 5371 at *2 (S.D.N.Y. Jan. 14, 1988).

2

protect any confidences disclosed to him and not to disclose those confidences to Calyon or its outside counsel.

As factual support for their argument, movants point out that Lee attended law school in Canada and has been admitted to practice law in New York for seven years. Prior to coming to Calyon in 2005, he worked for a New York law firm. He was hired into Calyon to work in the Structured Credit, Derivatives and CDO group where his job title was "Legal Structurer." The movants claim that Lee offered to help them negotiate terms of their employment agreements with Mizuho, and little else. Lee commented on various drafts of employment agreements, and between October and December 2006 he had conversations with Rekeda about leaving Calyon. In his affidavit, Rekeda said he "<u>understood</u> that Lee was acting in his capacity as an attorney and <u>expected</u> that Lee would keep our communications and any information that he obtained in this capacity confidential." (emphasis supplied). Rekeda Aff. ¶ 20.

However, notwithstanding the movants' self-serving, one-sided, conclusory statements, the whole of the evidence belies the argument that it would be reasonable to expect that Lee was acting as a lawyer for the movants. Calyon had a separate legal department, apart from the CDO group. Within CDO, Lee reported to a non-lawyer, Alexander Rekeda.[3] Neither Rekeda nor the other movants can point to any *legal* advice that Lee provided.[4] Lee reviewed contracts, but he thought they were *his* employment contracts and others (non-lawyers) in the group that left Calyon for Mizuho also reviewed the same contracts. Significantly, when the group sought legal advice on their contracts

---

[3] On one occasion, Rekeda sent Lee a deal document and asked him to have Calyon's legal department review it.

[4] One conversation that movants claim was a request for legal advice on whether taking documents from Calyon would be lawful took place in a crowded public bar.

3

and someone to negotiate on their behalf, they hired an employment attorney to represent them.[5]

Accordingly, there was no attorney-client relationship between Lee and his co-defectors. Had any of the others, non-lawyers, returned to Calyon and provided information similar to that provided by Lee, there would be no arguable grounds for disqualification. The mere fact of Lee's legal education and prior history as a lawyer does not change the result, all circumstances considered.[6] The movants' disqualification motion is denied.

So ordered

Dated: July 17, 2007
       New York, NY

                                                             *[signature]*
United States District Judge

---

[5] Even when it came to hiring a lawyer, Lee suggested a potential attorney he knew of, but the group decided to hire a different attorney who was recommended by Budd, a *non-lawyer*.

[6] Beyond privilege, the movants also assert that Lee had an ethical duty to keep his "client" confidences and not disclose them to Calyon or to Hogan & Hartson. Because Lee was not acting as an attorney for the movants, no such duty arose and he did not breach this non-existent duty.

4